## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| BIANCA MARCELLINO, et al. | Case No.  1:21-CV-01338 |
| Plaintiffs | JUDGE PAMELA A. BARKER |
| v. | |
| GEAUGA COUNTY HUMANE SOCIETY INC, et al. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | |

**I.      Federal Rules of Civil Procedure, R. 56 Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(a).  The burden is on the moving Plaintiffs to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**II.      Preliminary Relevant Facts**

On March 5, 2019, Plaintiff Bianca Marcellino was convicted of animal cruelty and sentenced by the Chardon Municipal Court.  Ex. A.  One of the Terms of Community Control/Probation was,

> That the Geauga Humane Society and other law enforcement have authority to inspect her outdoor premises or any structure where equines may be kept on a random, unannounced basis to ensure she remains in compliance during the term of her probation.

Ex. A.  Since the day Bianca Marcellino was convicted and sentenced, Defendant Christian Courtwright conducted probation inspection on Bianca Marcellino and her property on the

following dates, (1) March 5, 2019; (2) March 6, 2019, (3) March 9, 2019, (4) March 14, 2019;

(5) April 11, 2019, (6) March 9, 2020, (7) July 10, 2020; (8) July 13, 2019; (9) December 21,

2019; (10) March 14, 2020; (11) July 10, 2020. [1]  Since July 10, 2020 no probation inspections

have occurred.  CC Tr. 40: 16-20; CC Tr. 40: 16-22; CC Tr. 44: 1-9; CC Tr. 45: 23-25; Bianca

Marcellino Tr. 62: 19-21.  Both parties agree that when Bianca was sentenced by the state court,

"she became a probationer."  CC Tr. 142: 1-2.  Defendant Courtwright admits he is a law

enforcement officer.  CC Tr. 17: 8-9.

### III.    Law and Argument with Relevant Facts as to Count I and II

Count One and Two of the Complaint alleges that Defendants violated Plaintiffs' Fourth

Amendment rights when Defendant Christian Courtwright entered Bianca Marcellino's property

to conduct probation inspections.

#### A.  Defendants believe that the Judgment Entry of Conviction and Sentencing is a "Court Order" which requires them to conduct random and unannounced inspections

Defendants believe that a "court order" authorizes them to enter Bianca Marcellino's

property without a search warrant, without consent, and without reasonable suspicion.

Defendants refer to Bianca Marcellino's Judgment Entry of Conviction and Sentencing (Ex. A)

as this "court order."  CC Tr. 18: 13-23; 19:1-10; 117: 4-6 ("The court order you keep referring

to is her sentencing entry; is that correct? A Yes.").  According to Defendants this "Court Order"

is the "letter of the law' and gives them the authority to conduct warrantless and suspicionless

searches of Bianca's property.

---

[1] Bianca Marcellino Tr. 23: 1-4; Tr 40: 1-25; Tr. 45: 11-16; Tr. 45: 21-25; 46: 1-19; Tr. 47: 9-14; Tr. 48: 4-25; 49 to 52; Exhibit B – Word Document of Inspections produced in Discovery; Ex C – Marcellino Follow-Up; and Bianca Marcellino Declaration.

The former Executive Director Hope Brustein calls the Judgment Entry of Conviction and Sentencing "[t]he letter of the law."  Hope Brustein ("HB") Tr. 30:16-24.  Defendant Brustein believes that the Judgment Entry of Conviction and Sentencing gives Geauga County Humane Society the "permission to do follow-up visits, unannounced, without stipulations to how many or time frame."  HB Tr. 31: 4-8; *see also* CC Tr. 17: 10-14.  ("Q. As part of those duties you have, are you authorized to do probation inspections? [Courtwright Answers] Yes. It's usually in the sentencing that the Humane Society officer is doing the random unannounced inspections.").[2]

According to Courtwright, the probation inspections conducted by him were because,

> [i]t was a part of her sentence, was that she was put on probation, and part of that sentence was that there were unannounced inspections done by the Humane Society, and unfortunately, it's me that has to go out there.

CC Tr. 111: 17-22.  When Courtwright asked if he ever read any case law that would help him understand how to conduct probation inspections, his response was "I follow the instructions that are in the sentencing."  CC Tr. 110: 6-10; *see also* CC Tr. 110: 16-17 ("I'm going to follow whatever our Municipal Judge tells us to do."); CC Tr. 14: 19-20 ("I'm following the court order to do the court mandated probation checks."); CC Tr. 35: 6-11 (One of his job duties is to conduct probation checks, and this authority comes "through the court orders demanding probation checks."); CC Tr. 167: 15-16 ("we're operating under direction of The Court."); CC Tr. 167: 20-21 ("I think when Judge Stupica tells me to do something, I'm going to do it."); CC Tr. 201: 17-18 ("It's the Judge ordering it and I'm going to do it.").

---

[2] For clarification, Defendants often refer to the probation inspections conducted by Courtwright as "follow-up inspections."  HB Tr. 31:11-18; 30:2-8.

Despite Defendants claiming the Judgment Entry of Conviction and Sentencing was a "Court Order" that mandated them to conduct probation inspections, they apparently have the authority to also ignore that "court order."  It is undisputed that since July 10, 2020 Courtwright has not conducted any probation inspections.  CC Tr. 40: 16-20.  The reason Courtwright gave for not conducting any probation inspections for over two years, is "[b]ecause of how combative it got" and he "felt it was counter productive."  CC Tr. 40: 16-22.  He also testified that based upon this lawsuit, he decided "it was prudent to stand back and let the lawsuit play out."  CC Tr. 44: 1-9; *see also* CC Tr. 45: 23-25 ("the decision was made that we weren't going to be going back out to that property, until this lawsuit is settled.").  It is apparent that this "court order" that Defendants claim mandates Courtwright to conduct warrantless searches without reasonable suspicion and consent, is not an "order" but rather, is optional.

**B. The State Court's Judgment Entry of Conviction and Sentencing does not apply to Defendants, and a State Court has no authority to order or grant permission to Defendants to conduct random and unannounced inspections.**

Under the facts of this case, the state court does not have the authority to "order" a humane agent to conduct a random and unannounced probation inspection upon Bianca and her property.  However, the fact remains, that the state court DID NOT order Defendants to do anything.  A community control/probation term in a Judgment of Conviction and Sentencing is only applicable to the offender, as discussed below.  On the face of the Judgment, it is evident that the terms set forth as to community control are only enforceable against Bianca as the offender.

Ohio Revised Code Section 2929.22(A) specifically authorizes the court to impose terms of community control **upon the offender**,

4

> (A) Unless a mandatory jail term is required to be imposed by division (G) of section 1547.99, division (B) of section 4510.14, division (G) of section 4511.19 of the Revised Code, or any other provision of the Revised Code a court that imposes a sentence under this chapter upon an offender for a misdemeanor or minor misdemeanor has discretion to determine the most effective way to achieve the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code.
>
> Unless a specific sanction is required to be imposed or is precluded from being imposed by the section setting forth an offense or the penalty for an offense or by any provision of sections 2929.23 to 2929.28 of the Revised Code, a court that imposes a sentence upon an offender for a misdemeanor may impose on the offender any sanction or combination of sanctions under sections 2929.24 to 2929.28 of the Revised Code. The court shall not impose a sentence that imposes an unnecessary burden on local government resources.

R.C. 2929.22(A).  Contrary to well-established statutory authority, Defendants position is that the state court's Sentencing Judgment imposes a term of community control upon Defendants, but it does not.  The fact is, the Judgment of Sentencing and Conviction is not an "order" forcing the Defendants to do anything.  It is a sentencing judgment which sets forth the parameters of Bianca's sentence and the only person that it applies to is Bianca, and the only person who can be found in violation of that "order" is Bianca.  The state court's Judgment is limited to requiring the Defendant (Bianca) to permit such inspection, within the parameters of statutory limitations set forth by R.C. 2951.02 (discussed below).

Defendants position is that the Judgment directs it to conduct probation inspections, however such an order is outside the scope of the State Court's discretion, and Defendants belief that Bianca's Judgment of Conviction and Sentencing ordered them to perform probation inspections, contrary to the statute and the Fourth Amendment, is misplaced and not reasonable, and certainly not supported by any statutory, case law, or constitutional authority.  The "order" which Defendants believe is the Sentencing Judgment, is not in fact an order requiring GCHS to

5

inspect Bianca's property, and Defendants cannot rely upon that Judgment to claim that this "court order" requires them to conduct random and unannounced inspections.  A reasonable officer should or would know that a Judgment Entry of Conviction and Sentencing is not a "court order" directed towards anyone other than the offender.

The offender is Bianca Marcellino, **not** GCHS.  The terms of community control require Bianca to allow GCHS or other law enforcement to enter her property.  That term does not order GCHS or other law enforcement to enter her property, nor does it grant permission or authority for them to do so.  Defendants' belief that Bianca's Judgment Entry of Conviction and Sentencing grants them police power, authority, and/or permission to enter Bianca's property without a warrant and without reasonable suspicion is misplaced.  There is no such "court order", and even if there was, Defendants cannot ignore statutory language which limit a Humane Agent's authority, and statutory and constitutional law which require reasonable suspicion before conducting a probation check.  Defendants' beliefs, that the Judgment Entry of Conviction and Sentencing is a "court order" mandating them to conduct random and unannounced inspections, is not reasonable.

### C. A Humane Agent's Powers are granted by the General Assembly's Enabling Statutes

Even if the Judgment Entry of Conviction and Sentencing could somehow grant purported authority, permission, or police power to Defendant Courtwright to conduct warrantless and suspicionless searches upon Bianca and her property, a state court has no authority to trump legislative mandates, and interfere with Ohio's General Assembly.  *See Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St. 3d 280, 2010-Ohio-1029, ¶ 77 ("Courts

may not usurp the legislative function by substituting their judgment for that of a legislative

authority.") (internal citation and quotation marks omitted).

It is Plaintiffs' position that Courtwright, as a Humane Agent, has no authority to conduct

probation inspections.  In Ohio Humane Agent's authority is statutorily limited.  The Ohio

Revised Code sets forth the parameters of a humane agent's police power.  Ohio Revised Code

Section R.C. 1717.06 provides in relevant part,

> A county humane society organized under section 1717.05 of the
> Revised Code may appoint humane society agents for the purpose
> of prosecuting any person guilty of an act of cruelty to animals. Such
> agents may arrest any person found violating this chapter or any
> other law for protecting animals or preventing acts of cruelty
> thereto. Upon making an arrest, the humane society agent shall
> convey the person arrested before a court or magistrate having
> jurisdiction of the offense, and there make complaint against the
> person on oath or affirmation of the offense.

R.C. 1717.06; *see also* R.C. 1717.08 ("An officer, agent, or member of a county humane society

may interfere to prevent the perpetration of any act of cruelty to animals in the officer's, agent's,

or member's presence, may use such force as is necessary to prevent it, and to that end may

summon to the officer's, agent's, or member's aid any bystanders.").  According to the GCHS'

former Executive Director (Defendant) Hope Brustein, "[w]e are a Humane Society who is

authorized to enforce Humane Law up to and including prosecutions.".  HB Tr. 119: 12-13.  It is

Plaintiffs' position that a Humane Agent is only authorized to exercise police power in the realm

of investigating and prosecuting animal cruelty, and once a Defendant is sentenced, that power

ceases.

However, there is one case in Ohio (*City of Cleveland v. Turner* dated August 22, 2019)

which has held that a humane agent has authority to conduct probation inspections,

> [W]hile R.C. 2929.25 places an offender who is on community
> control under the supervision of the court or the probation

7

> department, a court has authority to appoint a humane agent of the
> APL as a "law enforcement officer" to assist with the enforcement
> of a probationer's community control conditions.

*City of Cleveland v. Turner*, 8th Dist. Cuyahoga No. 107102, 2019-Ohio-3378, ¶ 62 (citing

generally *State v. Helmbright*, 2013-Ohio-1143, 990 N.E.2d 154).  Plaintiffs disagree with the

majority opinion of *Turner* because a humane agent is not a probation officer.

Plaintiffs posit that the Dissent in *Turner* aligns with the statutory limitations of a humane

agents police power,

> I recognize that agents of the APL, as a humane society, have
> authority under *Chapter 1717 of the Ohio Revised Code* to arrest
> persons found violating that Chapter but there is no authority
> provided for them to enter a private home for inspection. The
> appellant was placed on inactive probation, a legal fiction. As a
> condition of such supervision, a probation officer, as a sworn officer
> of the court, may gain warrantless entry to a person's home. **To
> grant a private citizen this same authority is unconscionable.**

*Turner*, 2019-Ohio-3378 at ¶ 75, Eileen A. Gallagher, J., Concurring in Part and Dissenting in Part

(emphasis added).

## D.  Defendants know that a Humane Agent's duties do not include conducting probation inspections

Defendants' own words show that they understand that a humane agent is not a probation

officer, and that a humane agent's duties do not include conducting probation inspections.

Moreover, it is evident that Defendants understand the limitations of a humane agents' authority.

Defendant Courtwright admits he is "not a Probation Officer" but "acting for the Probation

Office."  CC Tr. 219: 13-14; *see also* CC Tr. 130: 12-13 ("I'm not the Probation Officer. I'm a

Humane Officer.").  The current Executive Director, and Courtwright's supervisor, Defendant

Clark admits that a humane agent is not a probation officer.  KC Tr. 25: 9-16 ("We have

8

probation officers in the county we work with, but [humane agents] are not [ ] probation officer[s].").

The lack of training as to probation inspections further supports Plaintiffs' position that a Humane Agent has no authority to conduct probation inspections.  If a humane agent was authorized to conduct probation inspections, it is presumed that these humane agents would be trained on probation inspections and the parameters of those inspections.  As Courtwright testified in his deposition, he received no training whatsoever in probation inspections.  CC Tr. 107: 5-7; *see also* CC Tr. 112: 1-3 (Answering "No" when asked if he was given any training on how to conduct probation inspections); CC Tr. 112: 4-7 (Answering "No" when asked if in all the training he has taken, no one has ever said what the parameters of probation inspection are); CC Tr. 190: 21-25 (The training he received did not relate to probation inspection entries.).

Defendant Brustein also admits that she has not been trained in probation inspections.  When asked if she had received specific training as to what laws are applicable to probation inspections, she answered "I have not received specific training because we relied on the letter of the law that was handed down in the event of animal cruelty guilty verdicts in the Court itself." HB Tr. 30: 3-19.  The current Executive Director of GCHS, Kenneth Clarke, and Courtwright's supervisor, testified during his deposition that he has not received any training on probation checks.  KC Tr. 45: 12-17.  Defendant Clarke is also a humane agent.  KC Tr. 6: 24.  When asked if he had received any formal or informal training about whether random and unannounced inspections are legal, his response was,

> I would assume if a judge is issuing an order that's part of a sentence, that that is the law that we are following. The judge is interpreting the law, issuing the sentence, and we are agents of the court so we're --that's not -- that's not our -- it's not our lane, so to speak.

9

KC Tr. 54: 24-25; 55: 1-10.  When asked if he had received any training that would inform him about whether or not random unannounced inspections are legal in Ohio, he answered, "I have not."  KC Tr. 55: 11-15.

A Humane Agent's power is limited to investigating and prosecuting for animal cruelty. See R.C. 1717.06 and 1717.08.  The General Assembly has chosen to limit the police power of humane agents, and the lack of training and knowledge about probation inspections evidences that humane agents are not probation officers, despite Defendants belief otherwise. Consequently, the only way in which Courtwright could legally enter Bianca's property to conduct a search of Bianca and her property is if he had consent, a search warrant, or there are exceptions to a search warrant.  None of these existed in this case.

### E. A State Court cannot usurp the General Assembly's clear and unambiguous limitations of the police power of a Humane Agent

In the event this Court determines that a humane agent can act as a probation officer, or can conduct probation inspections, and/or that the Judgment Entry of Conviction and Sentencing authorized Courtwright to conduct probation inspections, Plaintiffs have set forth below their arguments and law related to this matter.

As discussed above, Ohio's General Assembly has limited a Humane Agent's police powers under R.C. 1717.06 and 1717.08.  A state court cannot usurp the plain and unambiguous language set forth in those statutes.  Moreover, as discussed in more detail below, R.C. 2951.02 limits probation inspections based upon reasonable suspicion that the terms of probation are not being complied with, or that a crime has been committed.  The state court has no authority to substitute its judgment for the legislative mandate.  "It is not a court's function to pass judgment on the wisdom of the legislation, for that is the task of the legislative body which enacted the

legislation." *Klein v. Leis* (2003)*, 99 Ohio St. 3d 537, 541, 2003-Ohio-4779; *see also Martinez v. Larose*, 980 F.3d 551, 555 (6th Cir.) ("courts cannot substitute their judgment for the legislative mandate.") (internal citation and quotation marks omitted). "Questions regarding the wisdom of legislation are left to the General Assembly. If the General Assembly has the constitutional power to enact a law, its wisdom is of no concern to the court." *Goodrich v. Ohio Unemployment Comp. Review Comm'n*, 10 Dist. Franklin No. 11AP-473, 2012-Ohio-467, ¶12, citing *Ohio Pub. Interest Action Group v. Pub. Util. Comm*., 43 Ohio St.2d 175, 183, 331 N.E.2d 730 (1975), citing *State Bd. of Health v. Greenville*, 86 Ohio St. 1, 20, 98 N.E. 1019, 10 Ohio L. Rep. 22 (1912); *Brinkman v. Drolesbaugh*, 97 Ohio St. 171, 183, 119 N.E. 451, 15 Ohio L. Rep. 555 (1918). "When courts substitute their judgment for judgments made by the executive or legislative branches, courts exceed their authority, veritably swerving into the lanes of the other branches, and violating the Constitutional separation of powers." *SH3 Health Consulting, LLC v. Page*, 459 F. Supp. 3d 1212, 1220 (E.D. Miss., 2020).

F. **Ohio Law (R.C. 2951.02(A) requires a Probation Officer to possess reasonable suspicion before entering a person's property to conduct a probation inspection**

Assuming the random and unannounced inspection probation condition imposed upon Bianca, is an "order" that Defendants must follow and abide by, and/or assuming Courtwright can act as a probation officer, the random and unannounced probation condition nevertheless does not authorize Defendant Christian Courtwright to conduct probation inspections absent consent or reasonable grounds to believe that the probationer has failed to comply with the terms of his or her probation or that the probationer has committed a crime.

As explained in *City of Cleveland v. Turner*,

> R.C. 2951.02(A) authorizes warrantless searches during an offender's misdemeanor community control where, for example, an

> officer who conducts the search possesses "reasonable grounds" to
> believe that the probationer has failed to comply with the terms of
> his or her probation. [ ] Thus, absent a waiver to random warrantless
> searches, the statute provides limitations on authorized officers who
> conduct a search of a probationer's person or property in the course
> of their duties.

*Turner*, 2019-Ohio-3378 at ¶ 58, *quoting* R.C. 2951.02 (internal citations omitted); *see also*

*United States v. Huber*, unreported Case No. 1:22-cr-00052, 2022 U.S. Dist. LEXIS 153391, *9-

10, __ F.Supp.3d __.(N.D. Ohio August 22, 2022) (*quoting State v. Sowards*, No. 06CA13,

2007-Ohio-4863, ¶ 25 (Ohio Ct. App.) (*quoting* Ohio Rev. Code § 2967.131(C))[3] ("'Ohio law

permits a probation officer to conduct a warrantless search of a probationer's person or home if

an officer has 'reasonable grounds' to believe the probationer failed to abide by the law or by the

terms of probation.'"); *see also State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012. 2015-

Ohio-828, ¶ 12 (quoting *State v. Helmbright*, 10th Dist. Franklin Nos. 11AP-1080 and 11AP-

1081, 2013-Ohio-1143, ¶ 20, 990 N.E.2d 154 ("Thus, a warrantless search, pursuant to R.C.

2951.02(A), complies with the Fourth Amendment if the officer who conducts the search

possesses 'reasonable grounds' to believe that the probationer has failed to comply with the terms

of their probation.").

The facts in this case show that Defendants did not possess reasonable suspicion prior to

entering Bianca's property to conduct the probation inspections.  When Courtwright was asked at

his deposition, if he had reasonable suspicion that a crime was happening at any probation

inspections he conducted on Bianca, Courtwright responded, "[t]hat wasn't the reason I was out

there.  No."  CC Tr. 208: 20-25; 209: 1.  "The reason I was at [Bianca's] property, my intent for

being at the property was to conduct the probation check."  CC Tr. 209: 18-22.  As to reasonable

---

[3] This statute pertains to persons who have been incarcerated in  a state correctional institution

grounds or reasonable suspicion related to probation, Courtwright testified that he never heard anything about that related "specifically about probation." CC Tr. 112: 8-11. He has never heard that in Ohio he can only enter a probationer's property unless he has reasonable grounds. CC Tr. 112: 12-16. In the training he received, "there's nothing specific about probation." CC Tr. 114: 12-13. Courtwright admits that Chapter 1717 of the Ohio Revised Code guides him in terms of how he conducts his day to day business. CC Tr. 163: 2-15.

In fact, Defendants did not even know that R.C. 2951.02 even existed until they were deposed. HB Tr. 109:1-9; CC Tr. 218: 25, 219: 1-3; CC Tr. 227, 10-11; CC Tr. 226: 10-15. Courtwright testified that he is not aware of any statute in Ohio that governs probation inspections. CC Tr. 163: 20-25. Courtwright also admitted he has never had any training as to R.C. 2951.02, and that statute was never talked about in training. CC Tr. 224: 17-21. According to Defendant Hope Brustein, Courtwright's former supervisor[4] R.C. 2951.02 "is not a statute that guides the Humane Society, and that is why the Humane Society required, or had to of had an authorization in this case from the judge to do follow up visits." HB Tr. 109: 25; 110:1-4. Courtwright testified that he is not familiar with any statutes that dictate the parameters of a probation inspection, and that "[t]his is above my pay grade." CC Tr. 110: 18-21. He testified that knowing probation laws is the Probation Department's duty and he relies "on them to give me good instructions on how to do my probation checks." CC Tr. 110: 22-25.

Defendant Clarke had not heard of R.C. 2951.02 until he listened to Courtwright's deposition. KC Tr. 69: 23-25; 70: 1-3. Clarke admitted that he received no training on R.C. 2951.02. KC Tr. 71: 14-18. He testified that he is not familiar with any statutes that apply to

---

[4] CC Tr. 11: 25; 12: 1-3.

humane agent's entry onto a person's property to conduct a probation inspection.  KC Tr. 18-21.

He admitted that R.C. 2951.02 applies to humane agents.  KC Tr. 64: 4-5; *see also* KC Tr. 61-63.

### G.  R.C. 2951.02(A) satisfies the Fourth Amendment's reasonable requirement.

The Sixth Circuit has held that R.C. 2951.02(A) "satisfies the Fourth Amendment's

reasonable requirement."  *United States v. Huber*, unreported Case No. 1:22-cr-00052, 2022 U.S.

Dist. LEXIS 153391, *11; __ F.Supp.3d __.(N.D. Ohio August 22, 2022) (citing *United States v.*

*Fletcher*, 978 F.3d 1009, 1015 (6th Cir. 2020)).  A search does not offend the Fourth

Amendment so long as reasonable grounds supported it.  *Id*. at *10.  As explained in *Huber*,

> The Sixth Circuit uses a two-step inquiry to determine the applicability of a *Griffin* probationer search. 'First, courts examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement. If so, courts then analyze whether the facts of the search itself satisfy the regulation or statute at issue.' *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003) (citations omitted).

*Id.* at *10-11..

"Because a State statute supplies the legal basis for the initial search at issue, the Court

concludes that *Griffin* supplies the proper framework to analyze [the] search * * * ."  *Id.*  "As

long as the warrantless search of a probationer and their property 'is carried out 'pursuant to a

regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-

established principles,' it is consistent with the Constitution * * * .'"  *Huber*, *8 (*citing and*

*quoting Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)).  In

order to conduct a home visit on a probationer, "there must be reasonable suspicion that the areas

to be searched contain evidence of the violation."  *Huber*, at *13.

In Bianca's case, Courtwright had no reasonable suspicion to enter her property,[5] and therefore the facts do not satisfy the governing Ohio statute, and the searches were not reasonable under the Fourth Amendment because reasonable suspicion was lacking.

### H. The Fourth Amendment requires reasonable suspicion before entering a person's property to conduct a probation inspection

If the searches of Bianca's property was not based on reasonable suspicion, then they violated both Ohio law (as set forth above) and the Fourth Amendment.  The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Although a probationer's home is protected by the Fourth Amendment requirement that searches be reasonable, the United States Supreme Court "has made clear that the nature of the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment."  *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007).

The Fourth Amendment only requires reasonable suspicion to conduct a search of a probationer's property.  *United States v. Knights*, 534 U.S. 112, 121, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001).  "While a search of a home usually requires a warrant backed by probable cause, *Knights* held that the Fourth Amendment required 'no more than reasonable suspicion' to search a probationer's house when the probationer had agreed to a condition of probation that permitted suspicionless searches.."  *United States v. Sulik*, 807 Fed. Appx. 489, 493 (quoting *Knights*, 534 U.S. at 121); see also  *United States v. Colon*, unreported Case No. 1:18-CR-350, 2018 U.S. Dist. LEXIS 190631, *8 (N.D. Ohio Nov. 7, 2018) (citing *Samson v. California*, 547

---

[5] See Section III(F) above.

U.S. 843, 856, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006) (Holding that "[t]he Fourth

Amendment permits warrantless searches of probationers when a constitutional state law

authorizes the searches."  Moreover, the Sixth Circuit, requires at a minimum, "that a search

conducted without statutory authorization meet the federal standard of reasonable suspicion,

which in this case is equivalent to the state-law standard."  *United States v. Payne*, 181 F.3d 781,

788, 1999 U.S. App. LEXIS 13693, 1999 FED App. 0229P (6th Cir.).

       Prior to conducting a search of Bianca and her property, Courtwright did not possess a

search warrant,[6] nor did he have reasonable suspicion.  Courtwright acknowledges that the

section about reasonable grounds in R.C. 2951.02 "probably" applies to him.  CC Tr. 219: 15-20;

*see also* 217: 12-25.  However, Courtwright believes he had reasonable suspicion to enter

Bianca's property based upon the "court order".  Courtwright believes that the court order gives

him reasonable suspicion to enter Bianca's property.  CC Tr. 117: 7-16.  The court order gives

him reasonable suspicion to enter Bianca's property,

> [b]ecause the individual is found guilty of animal cruelty, so there's
> a suspicion that they could be continuing with that behavior, and it's
> up for the probation to make sure that that isn't continuing, ongoing
> or starting up again. So it's to make sure that Ms. Marcellino isn't
> keeping horses to which she could then neglect again.

CC Tr. 117: 21-25; 118: 1-3.  When Defendant Clarke, Courtwright's supervisor[7] was asked if

Courtwright had reasonable suspicion that Bianca was committing a crime or violating the terms

of her probation, he answered as follows,

> Well, the way I read this [R.C. 2951.02] is that the judge did have
> reasonable suspicion and issued an order as a part – or not an order,
> a sentence based on that suspicion.  And again, when somebody is

---

[6] Courtwright believes he does not need a search warrant to do a court ordered probation check.
CC Tr. 191: 15-17.
[7] CC Tr. 11: 25; 12: 1.

> sentenced for a crime, they lose rights. And those rights were
> removed from Bianca to be able to object to a random unannounced.

KC Tr. 64: 6-20.  He continued to explain that it was the judge that created the reasonable

suspicion,

> I would say that things like this in the code are open to interpretation
> by lawyers and judges across the State of Ohio. And I would believe
> that that is above our, if you will, pay grade on interpretation.  I can
> read this particular set of Ohio Revised Code in many different
> ways. What I would assume about this is that the court has given a
> sentence out and has reasonable suspicion; therefore it is ordering
> random unannounced probation checks. If it didn't have a suspicion
> that the person would violate the terms of their sentence they would
> not issue random unannounced probation checks. So I -- this seems
> to play very well with the random unannounced probation checks
> required by the sentence. Seems to make a lot of sense.
>
> I think that we have reasonable grounds to do those inspections
> based on the sentence so I agree with [R.C. 2951.02] code.

KC Tr. 65: 7-25; 66: 1-2.

When Courtwright was asked if he had reasonable grounds to enter Bianca's property he

responded "Yes" and explained that the reasonable ground was that "[b]ecause she was on

probation, and part of that probation was the unannounced inspections at the property."  CC Tr.

219: 25; 220: 1-2.  When asked if he had the belief, when he entered Bianca's property that she

was not abiding by the law, his answer was, "[e]very time I go out there, it's a possibility."  CC

Tr. 220: 3-8.  He testified that the unannounced inspections were to make sure that she did abide

by the law.  CC Tr. 220: 9-11.  He stated, "it was a distinct possibility that any time I went out

there, I could have found [animals/horses]."  CC Tr. 220: 12-22.  When asked if prior to

conducting each probation inspection upon Bianca's property he had information that would lead

him to believe Bianca was breaking the law, his response was "[s]he broke the law once[ ]" and,

> She was put on probation so she wasn't going continue to break the
> law. She was put on probation for breaking that law, and in the hopes

> of that probation, I'm sure it's that she's not going to continue to
> break the law. Part of the unannounced inspections are to make sure
> that she's not, that's she's vacating (*sic*) all of the animals in a human
> manner."

CC Tr. 221: 9-20. Courtwright admits that no one ever informed him that Bianca was not

abiding by the law. CC Tr. 222: 6-11.

As set forth in Bianca's Declaration, Courtwright informed her that she was required to

allow him on her property to conduct random probation checks. Bianca Declaration, ¶s 24-25;

32(a); 33-34; 51(b)(c)(d); 52-53; 57; 61-64. He informed Bianca during these searches that he

had no suspicion that she was violating probation, and did not need any suspicion. Id. at 68-69;

70(a)-(c); 82-83.

It is wholly unreasonable for Defendants to believe that the Judgment Entry of

Conviction and Sentencing created the reasonable suspicion required by R.C. 2951.02.


**IV.    Conclusion**

From the date Bianca was sentenced, Courtwright has entered her property no less than

eleven times . At no time did he possess reasonable suspicion that she violating the terms of her

probation or committing a crime. At no time did he have a warrant, and Bianca never gave him

consent to conduct the warrantless and suspicionless searches.

The source of Plaintiffs' injuries is not the state-court Judgment Entry of Conviction and

Sentencing. Defendants were acting pursuant to an unreasonable belief that Bianca's sentencing

was an "order" that required them, or gave them permission or authority, to conduct their illegal

searches. Defendants' conduct violated Bianca's constitutional rights and that right was clearly

established at the time the searches were conducted on her property. Defendants were

deliberately indifferent because it is well-settled law that a probationary search must be

supported by reasonable suspicion, as required by Ohio statute and the Fourth Amendment.
Bianca's Sentencing Judgment did not prevent Defendants from following well-established law

Neither a Court, nor Defendants can ignore clear legislative language which limits the scope of a humane agents police power.  The Judgment Entry of Conviction and Sentencing cannot, and did not, grant more powers that exceed the police power granted by the legislative authority.  Courtwright's authority to enter Bianca's property is limited by the enabling statute. Defendants know, or should have known that a humane agents police power is limited by statute, and that no one has authority to expand this authority except the General Assembly.

Defendant Courtwright has no statutory authority to make a warrantless entry upon Bianca's property, and Defendants knew or should have known the statutory limitations of Courtwright's police power.  Defendant Christian Courtwright has no authority to conduct probation inspections.  However if this Court determines he does have the authority, he is nevertheless limited in those searches by being required to possess reasonable suspicion prior to entry.  Moreover, a reasonable officer would have known that the Judgment Entry of Conviction and Sentencing was not a "court order" which applied to that that officer.

It is Plaintiffs' position that Courtwright has no authority to conduct probation inspections, and that he was required to have a search warrant prior to entering her property, and a reasonable officer should or would have known that a warrant is required, especially as Defendants admit that Courtwright is not a probation officer.  A reasonable officer knows or should know that entering a person's property without a warrant is not permitted.

If Courtwright is not a probation officer, then he has no authority to conduct any probation inspections of Bianca's property unless he has a warrant or consent, or the exception to

the warrant, such as exigent circumstances.  If he is a probation officer, or is acting as an arm of the probation department, he must have reasonable suspicion before entering Bianca's property.

## V.      Remaining Causes of Action

The remaining causes of action relate to Plaintiff's Monell claims and the searches conducted upon Plaintiff Karen Marcellino and Giancarlo Marcellino's property.  Plaintiffs request this Court grant them the ability to file a second motion for partial summary judgment in the event the Court grants this Motion for Partial Summary Judgment.  If Courtwright has not violated Plaintiff Bianca Marcellino's constitutional rights, then the remaining causes of action will fall as a matter of law, and for judicial efficiency and in order to preserve attorney fees, this request is being made.

Respectfully submitted,

 /s/ Michela Huth
MICHELA HUTH
(OH Reg. No. 0091353)
PO Box 17
Bolivar, OH 44612
Phone:  330-440-4027
Email:  michelahuth.esq@gmail.com
*Attorney for Plaintiff*


/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
(NY Reg. No. 1637677)
545 E. Jericho Turnpike
Huntington Station, NY 11746
Phone: 718-261-0200
Fax: 718-793-2791
Email: richard@thedoglawyer.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 6, 2022, I caused a copy of the foregoing *Memorandum in Support and Exhibits,* to be filed electronically on CM/ECF, which will cause a notice of filing to be sent to all counsel of record who have entered appearances.

/s/ Michela Huth
MICHELA HUTH